**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CHASE MILES, #M41581,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 25-cv-00162-SMY** |
| | ) | |
| **ANTHONY WILLS,** | ) | |
| **OFFICER KRAMER,** | ) | |
| **Z. PATTERSON,** | ) | |
| **JOHN DOE 1 (C/O, ERT Team), and** | ) | |
| **JOHN DOE 2 (C/O, ERT Team),** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Chase Miles, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Pontiac Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights that occurred while he was imprisoned at Menard Correctional Center. He claims he was subjected to excessive force, denied medical attention, held in unsanitary conditions, and retaliated against. He seeks monetary damages. (Doc. 1).

This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A, which requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): Plaintiff was in his

cell on May 22, 2024 around 9:25 a.m., when an inmate upstairs yelled at him to "grab the gallery line" (Doc. 1, p. 7). Plaintiff did so but Defendant C/O Kramer snatched the line from him and broke it. Being new at Menard, Plaintiff was not aware he had done anything improper. A few minutes later, Kramer returned and ordered Plaintiff and his cellmate to "turn around and cuff the fuck up." *Id.* They complied and were taken to a holding cell where they were ordered to shut up and stare at the ground. The officer shook down their cell and threw away their property while mocking Plaintiff.

Kramer caught Plaintiff answering a neighboring inmate's question about phone access and threatened him with mace. Plaintiff explained he was just responding to the guy next to him and didn't think it was proper procedure to mace him just for talking while he was cuffed behind his back in a locked cage. Kramer ordered Plaintiff to shut up and come to the front of the cage because he was going to seg. Plaintiff complied and Kramer aggressively escorted him out of the housing unit.

On the way to segregation, Kramer made Plaintiff put his face against the wall and began choking him, saying, "Say something now, smartass" (Doc. 1, p. 7). Plaintiff tried to pull away, but Kramer smashed his face into the wall (Doc. 1, p. 8). Plaintiff discovered his face was bleeding and felt light-headed. Plaintiff went down on his knee and asked for medical help. Kramer dragged Plaintiff to his feet. Other officers arrived, tackled Plaintiff from behind, and told him help was on the way. People in black suits grabbed Plaintiff, bending his shoulders back painfully, and brought him to the medical building. Plaintiff complied with the officers. Upon entering the building, someone took Plaintiff's legs out from under him and slammed him face-first into the ground, knocking him unconscious. When Plaintiff came to, he was being choked from behind. When the person let go, Plaintiff saw the officer had black skin. The officer stepped to the side

and stomped Plaintiff's head, nearly knocking him unconscious again. Plaintiff began to feel sick.

The officers dragged Plaintiff to his feet and he yelled, "My shoulder!" (Doc. 1, p. 8). One of the John Doe ERT[1] Team officers said, "Fuck your shoulder," and hit Plaintiff's shoulder in what he believed was an attempt to dislocate it. *Id.* They took Plaintiff to a medical room where four nurses were present. One nurse asked, "Do you want us to clean him up real quick before IA [Internal Affairs] gets here?" (Doc. 1 p. 8). They began to frantically clean Plaintiff's face to cover up the damage. Plaintiff asked the ERT officer why they did this to him. In response, an old, short ERT member punched Plaintiff in the side of his throat. *Id.* Plaintiff asked the nurses whether they saw that. A nurse with dark hair and a tattooed arm said, "I didn't see shit motherfucker" (Doc. 1, p. 8). Internal Affairs officers took photos of Plaintiff but didn't ask him anything. Plaintiff tried to tell a nurse he needed help, but she ignored him (Doc. 1, p. 9).

The officers violently escorted Plaintiff to the segregation building, then dragged him up several flights of stairs to a holding cell. The ERT Team made Plaintiff kneel in the corner of the cell and forced his face into a corner that smelled of urine. They kicked his thighs to force his legs apart and smacked the side of his head. An officer said, "give him three;" someone smacked Plaintiff's face again and kicked him in the groin. Plaintiff started to vomit. The officers mocked him and kicked him in the groin again. An officer jammed his fingers behind Plaintiff's ears, causing extreme pain. They dragged Plaintiff to another room and chained him to the floor in the corner where he continued to vomit everywhere. Plaintiff remained chained in his own vomit for a long time, feeling sick and dizzy. A nurse came in and checked his vitals several times. She asked why Plaintiff was so pale and sweaty. Plaintiff replied he had hit his head and didn't feel well. The nurse told him to "suck it up" (Doc. 1, p. 9).

---

[1] Plaintiff does not disclose what "ERT" stands for. The Court assumes he may be referring to an Emergency Response Team.

Eventually, Plaintiff was moved to segregation cell #619 (Doc. 1, p. 10). He was later found unresponsive and was told he had suffered several seizures and almost died. Plaintiff was taken to a local hospital where he underwent tests including MRIs, x-rays, and a sonogram of his genitals. Plaintiff was returned to Menard and housed for one night in the Health Care Unit. He was then moved back to seg cell #619. For the next three months, Plaintiff was on a soft food diet because his teeth had been knocked loose (Doc. 1, p. 10).

Plaintiff was interviewed by the Illinois State Police for criminal charges against the officers, but the paperwork was falsified. Plaintiff was later moved to Pontiac Correctional Center. He raises claims of excessive force, cruel and unusual punishment, due process, and staff retaliation (Doc. 1, p. 10).

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:

Count 1:    Eighth Amendment excessive force claim against defendants for beating Plaintiff on May 22, 2024.

Count 2:    Eighth Amendment deliberate indifference to serious medical needs claim against defendants for denying Plaintiff adequate medical care for his injuries suffered as a result of their excessive force on May 22, 2024.

Count 3:    Eighth Amendment cruel and unusual punishment claim against John Doe ERT Officers #1 and #2 for shackling Plaintiff in a cell where he was left to sit in his own vomit, after they injured him on May 22, 2024.

Count 4:    First Amendment retaliation claim against defendants for the conduct described in Counts 1, 2, and 3.

Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a

claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## Preliminary Dismissals

Plaintiff includes Warden Anthony Wills and Z. Patterson as named defendants, but he fails to mention them in his statement of claim and does not describe what they allegedly did to violate his constitutional rights.  Merely invoking the name of a potential defendant is not sufficient to state a claim against that individual.  *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Instead, a plaintiff is required to associate specific defendants with specific facts and claims so defendants are put on notice of the claims brought against them and can properly answer the complaint.  *See Hoskins v. Poelstra*, 320 F.3d 761, 764 (7th Cir. 2003).

Because Plaintiff has not articulated a claim against Wills or Patterson, Patterson will be dismissed from the case without prejudice.  Plaintiff's claims against Wills in his individual capacity will also be dismissed.  However, Warden Wills will remain as a party in his official capacity only to assist in the identification of the unknown defendants.

## Discussion

### Count 1

"Correctional officers violate the Eighth Amendment when they use force not in a good faith effort to maintain or restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010).  Here, Plaintiff alleges that Defendant Kramer choked him and smashed his face into the wall while taking him to segregation.  He also alleges that unknown officers on the ERT Team (designated as John Doe #1 and John Doe #2, Doc. 1, p. 3) hurt his shoulder, slammed him into the ground, knocked him unconscious, choked him, stomped his head, and punched his

throat on the way to the medical room and hit him in the head and groin in the segregation building. Plaintiff maintains that he was compliant with these defendants' orders as they transported him and that his injuries required hospitalization. These allegations state a viable excessive force claim against Kramer and the John Doe ERT Officers #1 and #2.[2]

### Count 2

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must plead facts suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* A guard who uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise[.]" *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996). Plaintiff's allegations are sufficient to state a claim for deliberate indifference in Count 2 against Kramer and the John Doe ERT Officers #1 and #2.

### Count 3

Prison conditions that deprive inmates of basic human needs – food, medical care, sanitation, or physical safety – may violate the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). To state an Eighth Amendment claim for unconstitutional conditions of confinement, a plaintiff must plead facts suggesting he was denied "the minimal civilized measure of life's necessities," amounting to a serious deprivation of basic human needs that created an excessive risk to his health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prisoner

---

[2] Plaintiff raises a Fourteenth Amendment due process claim in connection with these allegations (Doc. 1, p. 10). However, this claim is duplicative of the Eighth Amendment claims discussed herein and is therefore dismissed. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (claims are to be analyzed under the most explicit sources of constitutional protections).

must also sufficiently allege that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions. *Farmer*, 511 U.S. at 842.

Plaintiff describes being chained to the floor inside a room while he continued to vomit and felt sick and dizzy, after the ERT Officers beat him. He also describes remaining in that room for some period of time without the ability to clean or care for himself before he was moved to segregation cell #619. Plaintiff's allegations indicate that defendants knew of his condition, because a nurse was sent in several times to monitor his vital signs. This is sufficient for Plaintiff to proceed on the cruel and unusual punishment claim in Count 3 against the John Doe ERT Officers #1 and #2.

### Count 4

Prison officials may not retaliate against inmates for exercising their First Amendment rights to file grievances, lawsuits, or otherwise complain about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted). A plaintiff must identify the reasons that retaliation has been taken, as well as "the act or acts claimed to have constituted retaliation," to put the defendants charged with retaliation on notice of the claim(s). *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).

Here, while Plaintiff claims he was the target of retaliation, the Court cannot discern any First Amendment protected activity by Plaintiff that would support a viable retaliation claim. It is not enough to simply label a claim as retaliation. Plaintiff may believe that Defendant Kramer mistreated him in retaliation after Plaintiff grabbed the gallery line and told Kramer he thought it

would be improper to use mace on him while he was secured in handcuffs and had merely spoken to another inmate. But insubordinate verbal remarks or "backtalk" to prison staff are not protected speech. *See Kervin v. Barnes*, 787 F.3d 833, 834 (7th Cir. 2015); *Caffey v. Maue*, 679 F. App'x 487, 490-91 (7th Cir. 2017). For these reasons, the retaliation claim in Count 4 will be dismissed without prejudice.

### Unknown/John Doe Defendants

Plaintiff is responsible for securing information aimed at identifying the Unknown/John Doe ERT Defendant Officers #1 and #2, in accordance with the John/Jane Doe Identification Order that will be entered separately. Once the names of the unknown defendants are obtained, Plaintiff must file a motion to substitute the newly identified defendants in place of the generic designations in the case caption and throughout the Complaint. Menard Correctional Center Warden Anthony Wills, in his official capacity only, will remain as a defendant for the purpose of responding to Plaintiff's requests for information regarding the identity of the Unknown Defendants.

### Disposition

The Complaint states colorable claims in Counts 1 and 2 against Officer Kramer and John Doe ERT Officers #1 and #2, and in Count 3 against the John Doe ERT Officers #1 and #2. Count 4, Defendant Z. Patterson, and all claims against Defendant Wills in his individual capacity are **DISMISSED** without prejudice.

The Clerk shall prepare for Officer Kramer and Warden Anthony Wills of Menard Correctional Center (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and

8

return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**. Menard Warden Wills need only appear in this matter and need not answer the Complaint.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of

prosecution. *See* FED. R. CIV. P. 41(b).

Finally, based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  June 16, 2025**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.